**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL PERSON,** | ) | **CASE NO. 5:17CV1274** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **KIMBERLY CLIPPER,** | ) | **JONATHAN D. GREENBERG** |
| **Warden** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Michael Person ("Person" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Person is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Person*, Summit County Court of Common Pleas Case No. 2014-02-0569.  For the following reasons, the undersigned recommends that the Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Person's conviction as follows:

> {¶ 2} The Summit County Grand Jury indicted Person on the following counts: (1) one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree; (2) two counts of complicity to commit rape in violation of R.C. 2907.02(A), 2923.03(A)(2), a felony of the first degree; (3) one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; and (4) kidnapping in violation of R.C. 2905.01(A)(3), (A)(4), a felony of the first degree. Sexually violent predator specifications in violation of R.C. 2971.01(H) were attached to the rape and complicity to commit rape counts while sexual motivation specifications in violation of R.C. 2971.01, 2941.147 were attached to the felonious assault and kidnapping convictions.

> {¶ 3} The indictment arose from an incident that occurred during the late evening/early morning hours at Person's house after a house party broke up. Person negatively reacted to the interactions between S.M., his then-girlfriend, and other male attendees of the party. Once the other party guests were gone, except for Person's uncle who lived in the house, Person burned S.M.'s arm with a lit cigarette, dragged her into his bedroom, hit her and choked her, and ran a knife over her skin while threatening her. During the course of these events, Deandra Thomas, one of Person's acquaintances, arrived at the house. Upon his arrival, Person instructed S.M. to perform fellatio on Thomas and he ordered Thomas to have intercourse with her. [footnote omitted]. After Thomas stopped having intercourse with S.M., he punched her in the right eye and then left.

> {¶ 4} S.M. felt compelled to stay the night at Person's house due to Person's threatening demeanor and he forced her to have intercourse with him. In the early afternoon on the day after the incident, an acquaintance picked S.M. up and she drove S.M. to Barberton Citizens Hospital, where she presented with the following injuries: multiple bruises and scratches, a burn on her left shoulder, a swollen right eye, bleeding in the white of her left eye, and a chipped tooth. After presenting with these injuries, S.M. was transported via ambulance to St. Thomas Hospital, where she underwent a sexual assault medical examination.

> {¶ 5} Person waived the presentation of evidence to the jury regarding the sexually violent predator specifications. The matter then proceeded to a jury trial after which the jury found Person guilty of each count alleged in the indictment. The trial court subsequently conducted a hearing on the sexually violent predator specifications at which it reviewed statements that Thomas gave to police regarding the incident. After reviewing the evidence, the trial court determined that the sexually violent specifications were proven beyond a reasonable doubt. The State dismissed the sexual motivation specifications for the felonious assault and kidnapping charges.

{¶ 6} At sentencing, Person argued that his convictions were allied offenses of similar import and should be merged for the purposes of sentencing. However, the trial court rejected this argument and instead concluded that the offenses were not subject to merger as "[t]hey were all separate incidents with separate intent, separate animus, [and] separate conduct." The trial court ordered that Person's sentences for the rape, complicity to commit rape, and kidnapping charges run consecutively for a total prison term of 41 years to life.

*State v. Person*, 2016 WL 756930 at * 1-2 (Ohio App. 9th Dist. Feb. 24, 2016).

## II. Procedural History

### A.    Trial Court Proceedings

In March 2014, a Summit County Grand Jury charged Person with (1) one count of rape in violation of Ohio Rev. Code § 2907.02(A)(2) (Count 1); (2) two counts of complicity to commit rape in violation of Ohio Rev. Code § 2907.02(A)(2)/2923.03(A)(2) (Counts 2 and 3); (3) one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (Count 4); and (4) one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3) (Count 5). [1] (Doc. No. 7-1, Exh. 1.)  Person pled not guilty.  (Doc. No. 7-1, Exh. 2.)

On April 16, 2014, the Summit County Grand Jury issued a supplemental indictment to include sexually violent predator specifications in violation of Ohio Rev. Code §§ 2971.01(H) and 2941.148 for the rape and complicity to commit rape charges, and sexual motivation specifications in violation of Ohio Rev. Code §§ 2971.01 and 2941.147 for the felonious assault and kidnapping charges. (Doc. No. 7-1, Exh. 3.)  Person entered pleas of not guilty to the specifications.  (Doc.No. 7-1, Exh. 4.)

On September 29, 2014, Person waived his right to a jury trial on the sexually violent

---

[1] The Grand Jury also indicted Thomas for his role in the incident. (Doc. No. 7-1, Exh.1.) The trial court severed the co-defendants' trials. (Doc. No. 7-1, Exh. 15 at 123.)

3

predator specifications. (Doc. No. 7-1, Exh. 5.) The case proceeded to a jury trial that same day. (Doc. No. 7-1, Exh. 6.) The jury found Person guilty of all charges on October 3, 2014. (*Id*.)

On October 10, 2014, the state trial court imposed the following sentences: ten years to life in prison for each of the rape and complicity to commit rape convictions; five years' imprisonment for the felonious assault conviction; and eleven years' imprisonment for the kidnapping conviction. (Doc. No. 7-1, Exh. 7.) The sentences for rape, complicity to commit rape, and kidnapping were to be served consecutively to each other and the sentence for felonious assault was to be served concurrently with the other charges, for a total sentence of 41 years to life in prison. (*Id*.) The court also found Person guilty of the sexually violent predator specifications to the first three counts, but dismissed the sexual motivation specifications to counts four and five. (*Id*.)

**B.      Direct Appeal**

On November 26, 2014, Person, through counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court"). (Doc. No. 7-1, Exh. 8.) In his appellate brief, Person raised the following assignments of error:

1.      The trial court erred as a matter of law in imposing separate sentences upon Person in violation of the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution and Article I, Section[] 10 of the Ohio Constitution.

2.      The trial court erred as a matter of law when it reviewed a recorded statement of the co-defendant in violation of the Due Process Clause of the 6th and 14th Amendments to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

3.      Person's convictions are against the manifest weight of the

4

> evidence in violation of the Due Process Clause of the 14th
> Amendment to the U.S. Constitution and Article I, Sections 1, 10
> & 16 of the Ohio Constitution.

(Doc. No. 7-1, Exh. 9 (capitalization altered).)  The State filed a brief in opposition.  (Doc. No. 7-1, Exh. 10.)  On February 24, 2016, the state appellate court affirmed the trial court's judgment.  (Doc. No. 7-1, Exh. 11.)

Person did not timely appeal the state appellate court judgment.  Rather, on May 31, 2016, Person filed a Motion for Leave to file a Delayed Appeal and Notice of Appeal to the Supreme Court of Ohio.  (Doc. No. 7-1, Exhs. 12, 13.)  Therein, Person stated that his appellate counsel failed to notify him of the state appellate court decision until April 28, 2016, after the deadline to timely appeal.[2]  (Doc. No. 7-1, Exh. 13 at PageID#176.)  He stated, however, that "I found out I lost my appeal on 3-11-16 from a family friend."  (*Id.*)

On July 27, 2016, the Supreme Court of Ohio denied Person's motion and dismissed the appeal.  (Doc. No. 7-1, Exh. 14.)

**C.    Federal Habeas Petition**

On June 16, 2017,[3] this Court received for filing Person's Petition for Writ of Habeas

---

[2] As noted above, the state appellate court affirmed Person's conviction and sentence on February 24, 2016.  Under Ohio S.Ct. Prac. R. 7.01(A)(1), Person had 45 days to appeal to the Supreme Court of Ohio.  Forty-five days from February 24, 2016 is Saturday, April 9, 2016.  As that date falls on a weekend, Person's notice of appeal was due on Monday, April 11, 2016.  *See* Ohio S.Ct. Prac. R. 3.03(A)(1).

[3]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  Here, Person does not indicate in the Petition when he delivered it to prison authorities for mailing  (see Doc. No. 1 at 14) and the parties dispute this matter in their Briefing before this Court.  This issue will be discussed at greater length, *infra*, in connection with Respondent's argument that Person's Petition is time-barred.

5

Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  The Petition asserts the following grounds

for relief:

1.  The trial court erred as a matter of law in imposing separate sentencings upon Person in violation of the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution, and Article I, Section[] 10 of the Ohio Constitution.

    Supporting Facts: Trial court erred by sentencing Petitioner on allied offenses of similar import; i.e.[,] Petitioner's rape and kidnapping convictions should have merged, while his felonious assault and kidnapping convictions should have also merged.

2.  The trial court erred as a matter of law when it reviewed a recorded statement of the co-defendant in violation of the Due Process Clause of the 6th and 14th Amendments to the U.S. Constitution and Article I, Sections 1, 10, & 16 of the Ohio Constitution.

    Supporting Facts:  Petitioner asserts that the trial court erred reviewing out-of-court statements; where the consideration of these statements in determining Petitioner's innocence or guilt; violated [P]etitioner's [right] to confront witnesses.

3.  Person's convictions are against the manifest weight of the evidence [] in violation of the Due Process Clause of the U.S. Constitution and Article I, Section[s] 1, 10 & 16 of the Ohio Constitution.'

    Supporting Facts: Petitioner argues that his felonious assault and kidnapping convictions were against the manifest weight of evidence.

4.  Petitioner was denied his U.S. constitutional rights [of] equal protection of law and due process when the prosecution attempted to conceal exculpatory evidence.

5.  Petitioner was denied his right to equal protection of law; where through fraud and deceit false evidence was submitted to obtain Petitioner's conviction, resulting in a clear *Brady* and *Napue* violation.

(Doc. No. 1 at 5, 6, 8, 9, 10.)

On August 7, 2017, Person filed a Motion to Amend his Petition, seeking to add the

following two additional grounds for relief:

6

6.      Insufficient Evidence (actual innocence)

> <u>Supporting Facts</u>: The trial court violated Petitioner's United States Constitutional Rights under the Fifth, Sixth, and Fourteenth Amendments; when the trial court allowed to stand the jury verdict of guilt on one count of rape; two counts of complicity to commit rape; one count of felonious assault; and one count of kidnapping; where the State had failed to prove each essential element of said crimes.

7.      Petitioner's direct appeal counsel was constitutionally ineffective where counsel failed to bring petitioner aware of: (1) the existence of the State's ORC 2953.21 post-conviction proceeding; (2) the time-line and deadline for filing such petition, and (3) the triggering mechanism which started the deadline.

> <u>Supporting Facts</u>: Appellate counsel violated petitioner's Sixth and Fourteenth Amendment Rights, under the United States Constitution, where counsel failed to bring petitioner aware of the post- conviction remedy to raised material instances of ineffective assistance of trial counsel pertaining to counsel's failure to investigate facts, and interview/call witnesses, that would have impeached and disproved the alleged victim's credibility/testimony on essential facts of the case.

(Doc. No. 6.)  Respondent filed a brief in response to the Motion, in which she acknowledged that "[b]ecause Person filed his motion to amend before a responsive pleading was filed, Person may amend his petition 'as a matter of course.'"  (Doc. No. 8.)

On August 18, 2017, Respondent moved to dismiss the Petition on the grounds it is time barred by AEDPA's one-year statute of limitations, or, alternatively, that it asserts claims that are not cognizable on federal habeas review, are unexhausted, have been waived and are procedurally defaulted, or fail on the merits.  (Doc. No. 7.)  On September 13, 2017, Person filed a combined Brief in Opposition to Respondent's Motion to Dismiss and Motion to Hold his Petition in Abeyance while he exhausts claims in state court.  (Doc. No. 9.)  On September 27, 2017, Respondent replied to Person's Opposition to the Motion to Dismiss and opposed his Motion to Hold the Petition in Abeyance.  (Doc. No. 10.)

7

On November 8, 2017, the undersigned issued an Order denying Respondent's Motion to Dismiss.  (Doc. No. 12.)  Specifically, the Court rejected Respondent's argument the Petition was time-barred, finding "the facts surrounding the date Person filed his petition . . . are clearly in dispute" and "the statute of limitations issue, therefore, requires further briefing and consideration."  (*Id.* at 11.)  The Court also rejected Respondent's argument Person's First and Third Grounds are non-cognizable.  With regard to Ground One, the Court determined:

> [T]o the extent Person alleges his sentences violate Ohio Rev. Code § 2941.25,or the state appellate court misapplied Ohio law in considering his allied-offenses claim on direct review, he has not stated a cognizable ground for relief, as this Court must defer to and is bound by state-court rulings on issues of state law. However, to the extent Person contends the trial court's sentencing violates the Double Jeopardy Clause, and the state appellate court contravened or unreasonably applied Supreme Court precedent in rejecting his claim on direct appeal, his claim is cognizable on federal habeas review. The Court therefore denies Respondent's motion to dismiss this claim on cognizability grounds.

(*Id.* at 14.)  With regard to Ground Three, the Court explained:

> Respondent argues Person's third ground for relief, asserting his convictions were against the manifest weight of the evidence, also is not cognizable on federal habeas review. (Doc. No. 7 at 18-20.) Person also raised this claim to the state appellate court on direct appeal, which adjudicated it on the merits. *See Person*, 2016 WL 756930, at *2-5.
>
> It is well-settled that claims regarding the manifest weight of the evidence are based on state law, which federal habeas courts may not review. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilty beyond a reasonable doubt). In *Nash v. Eberlin,* 258 Fed. Appx. 761, 765 n.4 (6th Cir. 2007), however, the Sixth Circuit liberally construed a *pro se* habeas petitioner's manifest-weight-of-the-evidence claim to be a sufficiency- of-the-evidence claim. The court found that Ohio courts had "adequately passed upon" the petitioner's sufficiency claim because the "determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Id.* at 765.

As will be explained below, Person seeks to amend his petition to add a sufficiency

claim, and is entitled to do so. Applying *Nash*, therefore, rather than dismiss Person's manifest-weight claim, the Court will consider it subsumed under his new sufficiency claim. Respondent's motion to dismiss this claim also is denied.

(*Id*. at 14-15.)  Finally, the Court denied Respondent's argument that Person's claims should be dismissed as either procedurally defaulted or unexhausted, explaining "[t]hese are issues, however, that can be more fully and fairly addressed in the context of adjudicating Person's entire petition."  (*Id*. at 15.)

The Court then denied Person's Motion to Stay these Proceedings and Hold his Petition in Abeyance, finding he failed to demonstrate good cause for his failure to exhaust his Fourth and Fifth Grounds for Relief.  (*Id*. at 18.)  Finally, the Court granted Person's motion to amend his Petition to add two new grounds for relief; i.e., his claim challenging the sufficiency of the evidence supporting his convictions and asserting ineffective assistance of appellate counsel for failing to advise him regarding state post-conviction procedures.  (*Id*. at 16.)  Person was ordered to file his Amended Petition on or before December 27, 2017. (*Id.* at 20.)  Respondent was ordered to file an Answer to the Amended Petition within 30 days from the date the Amended Petition is filed.  (*Id.*)

On February 21, 2018, the undersigned issued an Order noting that Person had failed to file his Amended Petition as directed.  (Doc. No. 13.)  However, in light of Person's *pro se* status, the Court stated it would nonetheless consider the additional claims set forth in his Motion to Amend; i.e., his sufficiency of the evidence and ineffective assistance of appellate counsel claims.  (*Id.*)  Respondent was ordered to file a complete copy of the state court trial transcript, which she did on March 21, 2018.  (Doc. No. 14.)  In addition, and with the permission of the Court, Respondent filed Supplemental Briefing on that same date.  (Doc. No.

9

15.)

On October 26, 2018, after having received an extension of time, Person filed his

Traverse.  (Doc. No. 18.)

### III. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a

one-year limitations period in a habeas action brought by a person in custody pursuant to the

judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the

latest of--

> (A) the date on which the judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action
> in violation of the Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the
> Supreme Court, if the right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### A.    Section 2244(d)(1)(A) – Date on which the Judgment Became Final

Here, this Court already determined, in its November 8, 2017 Order,[4]  that the limitations

period expired on June 9, 2017:

### 1.    Section 2244(d)(1)(A):  Final Judgment

_____

[4] Neither party filed Objections to the undersigned's November 8, 2017 Order. Nor have they
otherwise disputed, in subsequent briefing, the Court's calculation of the expiration of the
statute of limitations.

10

Respondent contends Person's limitations period was triggered on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . ." under § 2244(d)(1)(A), but he did not file a timely petition within the prescribed one-year period.  (Doc. No. 7 at 9-10.)

Here, the trial court issued its judgment entry on October 24, 2014, and the sentencing entry on October 27, 2014.  (Doc. No. 7-1, Exhs. 6, 7.)  The state appellate court affirmed the trial court's judgment on February 24, 2016.  (Doc. No. 7-1, Exh. 11.)  Person had forty-five days in which to appeal the state appellate court's judgment.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1).  Person did not file a notice of appeal during that time, so his conviction became final when that time period ended, on Monday, April 11, 2016.  *See* Ohio S. Ct. Prac. R. 3.03(A)(1) (the day of the event from which the designated period of time begins to run is not included in computing time prescribed by rules; if the last day of the period falls on a Saturday or Sunday, the period runs until the following Monday).

Accordingly, pursuant to § 2244(d)(1)(A), the statute of limitations on Person's federal habeas petition began to run the following day, April 12, 2016.  *See* Fed. R. Civ. P. 6(a)(1) ("In computing any time period . . . exclude the day of the event that triggers the period."); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (applying Rule 6(a) standards to computation of time for § 2244(d) statute of limitations purposes).  Absent any tolling events, the AEDPA limitations period would have expired one year later, on April 12, 2017.

### 2.    Section 2244(d)(2):  Statutory Tolling

AEDPA allows for statutory tolling, which, under proper circumstances, will extend the one-year statute of limitations.  Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral relief is pending is not counted against AEDPA's one-year statute of limitations.  28 U.S.C. § 2244(d)(2).  But the state-court petitions and applications must be both "pending" and "properly filed" in order to stay the limitations period.  *Id.*  The proceedings must be pending because the provision "does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Winkfield v. Bagley*, 66 Fed. Appx. 578, 581 (6th Cir. 2003).  In addition, untimely motions are not "properly filed" and will not stop the one-year clock.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  This is so even where there are exceptions to a state timely-filing requirement, such as Ohio Appellate Rule 26(B)'s "good cause" exception to its filing deadline for reopening applications.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005).  Therefore, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).  Respondent argues that Person's motion for leave to file a delayed

11

appeal in the Ohio Supreme Court stopped the AEDPA clock, extending Person's limitations period until June 8, 2017.  (Doc. No. 7 at 10.)  The Court agrees that Person's motion for a delayed appeal tolled his AEDPA statute of limitations.  *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (a motion for delayed appeal tolls the running of AEDPA's one-year statute).  But Respondent miscalculates the deadline.

> **Person filed the motion for delayed appeal on May 31, 2016, forty-nine days after the AEDPA clock began to run.  (Doc. 7-1, Exh. 12.)  The state court denied the motion on July 27, 2016.  (Doc. No. 7-1, Exh. 14.)  The AEDPA limitations statute, therefore, began to run again the next day, July 28, 2016, and expired 316 days later (365 days minus the forty-nine days the limitations period had run before the motion was filed), or on June 9, 2017.** *See Searcy*, 246 F.3d at 519 ("although the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to being running anew when the state court denied the motion").  **Person's petition was time-stamped by this Court on June 16, 2017, eight days after the statute of limitations expired.**

(Doc. No. 12 at 7-9) (emphasis added).

The Court observed, however, that a *pro se* petition is deemed "filed" on the date the prisoner delivers it to prison officials for mailing.  (*Id.* at 9.)  The Court further noted that the parties disagreed on when Person delivered his *pro se* Petition to prison authorities for mailing, and explained the significance of this issue as follows:

> Person argues, however, that he "surrendered his 2254 habeas petition over to the appropriate prison authorities . . . [on] June 7, 2017," making his petition timely under the so-called "prison mailbox rule."  (Doc. No. 9 at 3.)  That rule permits a *pro se* prisoner's filing to be deemed filed on the date the prisoner gives it to prison officials to mail to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).  Ordinarily, in applying the rule, courts "treat the petition as filed on the date [the prisoner] signed it."  *Goins v. Saunders*, 206 Fed. Appx. 497, 498 n.1 (6th Cir. 2006).  But Person did not provide that date – or any other date – in his petition.  He did not complete the section of the petition that states, "I declare (or certify, verify, or state) under penalty of perjury that the following is true and correct and that this petition for Writ of Habeas Corpus was placed in the prison mailing system on the ____ day of _____, 2017."  (Doc. No. 1 at 14.)

Nevertheless, Respondent has submitted with her motion a "Personal A/C

12

Withdrawal Check Out-Slip" that Person signed and dated June 9, 2017, the day the AEDPA statute expired. Through this slip, Person apparently requested that funds be withdrawn from his prison account to cover postage for "Legal Mail" to be delivered to this Court. The slip shows that his request was processed on June 15, 2017. (Doc. No. 7-1, Exh. 18.) Person claims that he "post-dated" the slip June 9, instead of writing the actual date of June 7, because he "though[t] it probable that it would take prison personnel a day or so after including the check to actually mail his petition." (Doc. No. 9 at 3.) Respondent counters that Person has simply manufactured this argument to meet the June 8 statute of limitations deadline she put forward in her motion to dismiss. (Doc. No. 10 at 2.) She argues the date Person *requested* the withdrawal as shown on the slip – June 9 – is accurate, and Person had no reason to post-date the withdrawal slip because there is a separate box on the form for prison officials to indicate when the request was *processed* – in this case, on June 15, 2017. (Doc. No. 10 at 2.)

(*Id.* at 9-10.) The Court then found that "the facts surrounding the date Person filed his petition, therefore, are clearly in dispute" and determined further briefing was necessary to resolve the issue. (*Id.*)

 Respondent submitted supplemental briefing on March 21, 2018 but did not further address the statute of limitations issue and, instead, "rest[ed] on the arguments presented in her motion to dismiss and other filings." (Doc. No. 15 at 1.) Person did, however, further address the statute of limitations issue, in his Traverse filed October 26, 2018. (Doc. No. 18 at 4-10.) Therein, Person states that he was "one day late in putting his petition in the institution mailbox." (*Id.* at 4) ("Petitioner acknowledges Respondent's interpretation of the rule regarding being time-barred, but however, Petitioner asserts that he was only one date late in putting his petition in the institution mailbox because he was sick and therefore feel that his petition should not be dismissed as being time-barred.")

 The Court interprets this statement as meaning that Person acknowledges he did not give his *pro se* Petition to prison officials for mailing until June 10, 2017, one day after the AEDPA statute of limitations expired on June 9, 2017. Accordingly, and as Person has conceded his *pro*

13

*se* Petition was "one day late," the Court finds the Petition was not timely filed for purposes of

AEDPA's statute of limitations.[5]  Therefore, unless equitable tolling is appropriate or Person is

entitled to begin calculating the statute of limitations from an alternative date, his Petition

should be dismissed as time barred.

**B.        Section 2244(d)(1)(D)– Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later

than the date when a petitioner's conviction became final if "the factual predicate of the claim or

claims presented" was not discovered by a petitioner, acting with due diligence, until a later

date.

In his Traverse, Person asserts he is entitled to a later start date of the statute of

limitations pursuant to the above provision.  (Doc. No. 18 at 8-9.)  He does not clearly explain

the basis for his argument, nor does he identify the later date upon which he believes the statute

of limitations should begin to run.  (*Id*.)  However, liberally construing Person's *pro se* filing,

he appears to argue that he is entitled to later start date as to all of the grounds raised in his

Petition due to "the failure of his appellate counsel's [sic] to notify him of the denial of his

appeal and the next step that he needed to take to further his appellate process."  (*Id*. at 8.)

Person further asserts he has "exercised diligence to properly get the notification as to the status

of his appeal so he could further his appellate process timely." (*Id*.)

---

[5] Because Person has conceded his Petition was late, the Court need not address the legal issue of whether his "Personal A/C Withdrawal Check Out Slip" dated June 9, 2017 constitutes sufficient evidence, under *Houston v. Lack, supra*, that he delivered his Petition to prison authorities for mailing on that date.  However, even assuming, *arguendo*, that Person's Withdrawal Slip demonstrates that he timely delivered his Petition to prison authorities for mailing on June 9, 2017 pursuant to *Lack*, his Petition should nevertheless be dismissed as procedurally defaulted, as discussed at length *infra*.

Federal courts in this Circuit have found that the time commences under §

2244(d)(1)(D) when the factual predicate for a habeas petitioner's claim could have been

discovered through the exercise of due diligence, not when it was actually discovered by a

given petitioner. *Redmond v. Jackson*, 295 F. Supp 2d 767, 771 (E. D. Mich. 2003). *See also*

*Chinn v. Bergh*, 2014 WL 3894376 at * 4 (E.D. Mich Aug. 8, 2014). Moreover, the time under

the AEDPA's limitations period begins to run pursuant to § 2244(d)(1)(D) when a habeas

petitioner knows, or through due diligence, could have discovered, the important facts for his or

her claims, not when the petitioner recognizes the facts' legal significance. *See Redmond*, 295

F.Supp.2d at 771; *Chinn,* 2014 WL 3894376 at *4. Indeed, courts within this Circuit have held

that "§2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner

gathers every possible scrap of evidence that might support his claim." *Redmond*, 295

F.Supp.2d at 771.

A habeas petitioner has the burden of proof in persuading a federal court that he

exercised due diligence in searching for the factual predicate of his habeas claims. *See DiCenzi*

*v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006); *Stokes v. Leonard,* 36 Fed. Appx. 801, 804 (6th

Cir.2002); *Lott v. Coyle*, 261 F.3d 594, 605-606 (6th Cir. 2001). The question of due diligence

is fact specific and depends on various considerations. *See DiCenzi*, 452 F.3d at 471; *Steward*

*v. Moore*, 555 F.Supp.2d 858, 867 (N.D. Ohio 2008).

Here, Person, through counsel, timely appealed his conviction and sentence to the state

appellate court, which affirmed the trial court's judgment on February 24, 2016. (Doc. No. 7-1,

Exh. 11.) As noted *supra*, under Ohio S.Ct. Prac. R. 7.01(A)(1), Person had 45 days to appeal

to the Supreme Court of Ohio; i.e., until Monday, April 11, 2016. The record reflects he did not

timely appeal and, instead, filed a Motion for Leave to File Delayed Appeal and Notice of

Appeal to the Supreme Court of Ohio on May 31, 2016.  (Doc. No. 7-1, Exh. 13.)

In his Motion for Leave to File Delayed Appeal, Person claimed his appellate counsel

failed to inform of the state appellate court decision until April 28, 2016.  He explained as

follows:

> On Feb 24, 2016, my direct appeal was denied.  I never received notification from
> my appellant attorney Diane Dougherty, who has filed a motion to withdraw from
> my case.  I was then sent a letter from [attorney] Paul Grant stating that he was
> appointed as my new counsel.  I reached out to him in hopes of obtaining all my
> necessary paperwork.  I was never sent any copies.  On April 5, 2016. [sic] The
> public defenders office sent me a copy of the appellate briefs.  On April 28, 2016.
> [sic] The attorney Paul Grant sent me a copy of the Decision and Journal Entry.  Also
> a statement notifying me of my denial of the direct appeal.  I have attached all
> attempts made to attorneys and necessary paperwork to prove that I wasn't at fault
> for the delay.

(Doc. No. 7-1, Exh. 13 at PageID# 173-174.)  Person then attached an Affidavit to his Motion,

in which he avers:

> 1.    I found out I lost my appeal on 3-11-16 from a family friend.
>
> 2.    On 2-24-16. My direct appeal was denied in the 9th District. The appellate
>       attorney or the courts both failed to notify me of such denial until April 28,
>       2016. 17 days after my deadline to file with Supreme Court of Ohio. Wich
>       [sic] made it extremely difficult to further my appellate process.

(Doc. No. 7-1, Exh. 13 at PageID# 176.)  Person also attached the following as exhibits to his

Motion for Leave: (1) notarized documents dated March 24, 2016 which appear to be directed

to attorneys Diane Dougherty and Paul Grant and request information regarding his case; (2) a

letter dated April 28, 2016 from attorney Paul Grant to Person, informing him that his appeal

had been denied and attaching a copy of the state appellate court decision; and (3) several

pleadings in the state trial court relating to Ms. Dougherty's withdrawal as counsel and the

16

appointment of Mr. Grant.  (Doc. No. 7-1, Exh. 13 at PageID#s 178, 197-201.)

It appears, then, that Person is now arguing that the AEDPA statute of limitations should not commence until April 28, 2016.[6]  The Court finds this argument to be without merit.  In the Affidavit attached to his Motion for Leave to File Delayed Appeal, Person expressly states that he "found out I lost my appeal on 3-11-16 from a family friend."  (Doc. No. 7-1, Exh. 13 at PageID#176.)  Thus, Person was aware of the "factual predicate" of his claims (i.e., the denial of his appeal and the need to further appeal to the Supreme Court of Ohio) on March 11, 2016, well prior to the April 11, 2016 deadline for appealing to the Supreme Court of Ohio.  Person offers no explanation in his Motion for Leave to File Delayed Appeal for his failure to promptly and timely appeal after learning, on March 11, 2016, of the state appellate court's adverse decision.  Person also fails to address this particular issue in either his Petition or his Response to Respondent's Motion to Dismiss.[7]

---

[6] If the statute of limitations started to run on April 28, 2016, it would have run for 33 days until Person filed his Motion for Leave to File Delayed Appeal on May 31, 2016.  The statute would have then been tolled from May 31, 2016 until July 27, 2016, when the Supreme Court of Ohio denied Person's Motion.  The statute would have re-commenced on July 28, 2016 and run for 332 days (i.e., 365 days minus 33 days) until it expired on June 26, 2017.  As the Petition was received for filing in this Court on June 16, 2017, it would be considered timely.

[7] As discussed *infra*, Person now asserts (for the first time) that his untimeliness should be excused because "he first got sick on or about August 8th 2015 and had surgery about 7 days later (15th August 2015) and had been going back and forth to the hospital for numerous medical emergency, follow ups and complications."  (Doc. No. 18 at 6.)  However, this allegation has no relevance to the primary issue under § 2244(d)(1)(D); i.e., when the factual predicate for Person's habeas claims could have been discovered through the exercise of due diligence.  Moreover, and as discussed at greater length in connection with Person's request for equitable tolling, Person offers no evidence to support his claim that he was unable to either timely appeal to the Supreme Court of Ohio and/or timely file the instant Petition due to an unspecified medical condition.

Finally, it bears repeating that this Court found the statute of limitations did not even begin to run until April 12, 2016.  Thus, the fact that Person was not notified of the state appellate court decision until March 11, 2016 does not effect the running of the statute of limitations or otherwise render his Petition timely.  Accordingly, the Court rejects Person's argument that he is entitled to a later start date for all of his habeas claims because his appellate counsel failed to timely notify him of the state appellate court's direct appeal decision.

Looking at each claim individually, the Court further finds Person has failed to establish that the statute of limitations commenced at a later date pursuant to § 2244(d)(1)(D).  Person's first habeas ground for relief is that the state trial court violated the Double Jeopardy Clause when it imposed separate sentences for his rape, felonious assault, and kidnapping convictions. (Doc. No. 1 at 5.)  His second ground is that the state trial court violated the Confrontation Clause when it admitted a recorded, out of court statement of the co-defendant at trial.  (*Id.* at 6.)  Person's third and sixth grounds for relief allege his convictions are against the manifest weight of the evidence and unsupported by sufficient evidence, respectively.  (Doc. No. 1 at 8, Doc. No. 6.)

Person does not argue that the factual predicates of these specific claims became known to him at some point in time after his conviction became final.  Indeed, by their very nature, these claims are based on facts that would have been known to Person at the time of sentencing in October 2014.  As such, they cannot serve to delay the running of the statute of limitations under § 2244(d)(1)(D).

Person's fourth and fifth grounds for relief allege he was denied his constitutional rights "when the prosecution attempt to conceal exculpatory evidence" (Ground Four) and "where

18

through fraud and deceit false evidence was submitted to obtain petitioner's conviction, resulting in a clear *Brady* and *Napue* violation" (Ground Five).  (Doc. No. 1 at 9, 10.)  Person offers no supporting facts regarding either of these claims in the Petition and, further, fails to provide any explanation or discussion of the basis for either of these claims in any of his briefing before this Court.  Notably, he does identify any specific *Brady* or *Napue* evidence in any of his filings in this Court, nor does he state when he became aware of such evidence.  He also fails to either argue or demonstrate that he exercised due diligence in searching for the factual predicate of these claims.  Accordingly, the Court finds Person has failed to demonstrate that he is entitled to a later start date under § 2244(d)(1)(D) with respect to either Grounds Four or Five.

Finally, Person's seventh ground for relief is that his appellate counsel was ineffective for failing to notify him of "(1) the existence of the State's ORC 2953.21 post-conviction proceedings; (2) the time-line and deadline for filing such a petition; and (3) the triggering mechanism which started the deadline."  (Doc. No. 6.)  Person does not identify when he became aware of the factual predicate for this claim nor has he argued or demonstrated that he exercised due diligence in searching for the factual predicate of this claim.  Accordingly, the Court finds Person has failed to demonstrate that he is entitled to a later start date under § 2244(d)(1)(D) with respect to Ground Seven.

Therefore, and for all the reasons set forth above, the Court finds Person has failed to identify any factual predicate that would justify a later start date of the statute of limitations.[8]

---

[8] Person does not argue that the limitations period should commence at a later date for any of the reasons set forth in § 2244(d)(1)(B) or (C).

### C.    Equitable Tolling

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling."  *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing.  *Holland,* 130 S.Ct. at 2565.  *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence."  *Holland*, 130 S.Ct. at 2565.  That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence.  *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012);  *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (stating that a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights");  *Henson v. Warden, London Correctional*

*Inst.*, 620 Fed. Appx. 417, 419 (6th Cir. 2015).

Here, Person argues he is entitled to equitable tolling for two reasons.  First, he maintains equitable tolling is warranted in light of his appellate counsel's failure to timely notify him of either the state appellate court's February 2016 direct appeal decision or the deadline for appealing to the Supreme Court of Ohio.  (Doc. No. 18 at 9.)  Second, Person asserts he has suffered various physical illnesses during the relevant time period that prevented him from timely filing his Petition.  (*Id.* at 9.)  Specifically, he states he suffered from complications from ulcerative colitis and other unidentified physical health problems, which necessitated surgery, "medical lay in," bed rest, and repeated trips to either the prison medical facility or an outside hospital.  (*Id*. at 9.)  Person maintains that, despite these impediments, he has been diligent in pursuing his claims, citing his numerous attempts to obtain information regarding how to protect both his direct appeal and federal habeas rights.  (*Id*. at 10.)

The Court finds Person has failed to demonstrate he is entitled to equitable tolling based on ineffective assistance of appellate counsel.  The Sixth Circuit has found that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant" equitable tolling.  *Keeling*, 673 F.3d at 462 (quoting *Robinson v. Easterling*, 2011 WL 1977272 at * 3 (6th Cir. May 20, 2011)).  However, "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'"  *Robinson*, 2011 WL 1977272 at * 3 (quoting *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)).  Rather, to obtain equitable tolling, a petitioner "must demonstrate that he exercised a reasonable diligence in protecting his appellate rights."  *Id*.

21

The Court finds Person failed to exercise reasonable diligence in either pursuing his direct appeal to the Supreme Court of Ohio or protecting his federal habeas rights. While Person asserts his appellate counsel did not notify him of the state appellate court decision until April 28, 2016 (nearly three weeks after the April 11, 2016 filing deadline), he submitted a sworn affidavit in the Ohio Supreme Court indicating that he "learned that [he] lost [his] appeal on 3-11-16 from a family friend." (Doc. No. 7-1, Exh. 13 at PageID# 176.) Person had thirty days remaining from that date to timely appeal but failed to do so. He offers no explanation, in any of his briefing before this Court, for why he failed to promptly file a notice of appeal to the Ohio Supreme Court once he became aware of the state appellate court decision on March 11, 2016. Moreover, Person also fails to explain why he waited over ten (10) months after the denial of his Motion for Leave to File Delayed Appeal on July 27, 2016 to file his habeas Petition in this Court. (Doc. No. 7-1, Exh. 14.)

Person suggests for the first time in his Traverse that he was "reasonably diligent" in light of his various physical health problems. This argument is without merit. The Court first notes Person failed to raise this issue in either his Petition or his response to Respondent's Motion to Dismiss the Petition as time-barred. It was only after he conceded, in his Traverse, that his Petition was "one day late" that Person for the first time argued that his untimeliness was due to his physical health problems. More importantly, Person has failed to clearly articulate the nature of his physical impairments or adequately explain how they prevented him from timely pursuing his appeal rights. He avers generally (and without documentation or

22

third-party affidavits in support)[9] that he has been "continuously ill," rushed to the emergency room, and "placed on medical lay-in" on repeated occasions in October 2018.  (Doc. No. 18 at 2.)  Person later states that his "institutional medical record shows that he first got sick on or about August 8th 2015 and had surgery about 7 days later (15th August 2015) and had been going back in [sic] forth to the hospital for numerous medical emergency, follow ups, and complications."  (*Id*. at 6.)  He states he suffered from "constant illness" during which he was "feeling ill, delusional, and confused due to medication and treatment."  (*Id*. at 5.)  Person also claims he was rushed to the hospital in October 2018 due to complications from ulcerative colitis.  (*Id*. at 10.)

Person, however, has submitted no medical documentation or third-party affidavits that would enable the Court to objectively ascertain the precise nature of his illness or the detrimental effect of that illness on his ability to either timely pursue his direct appeal to the Supreme Court of Ohio or file his federal habeas petition.  Moreover, the Court notes that Person became aware of the state appellate court decision on March 11, 2016 and thereafter sent numerous letters to his appellate counsel in late March 2016 seeking information regarding his appeal.  (Doc. No. 7-1, Exh. 13 at PageID# 176, 197, 198.)  He fails to explain why he was able, despite his physical health problems, to prepare and mail correspondence to his attorneys, but was unable to prepare and file a timely notice of appeal to the Supreme Court of Ohio by the

---

[9] Person states that he is " not allowed per DRC Rules to copy his medical records" and states this Court "must have them subpoenaed to see that he has been sick and . . . to show that he has been truthful."  (Doc. No. 18 at 2.)  The Court rejects Person's suggestion that it is this Court's obligation to subpoena his medical records. As noted above, Person "bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata*, 662 F.3d at 741 (quoting *Griffin*, 308 F.3d at 653).

April 11, 2016 filing deadline.  Nor has he sufficiently demonstrated he was incapable of filing his federal habeas petition due to his physical health problems throughout the entire ten month time period between July 27, 2016 (the date his Motion for Leave to File Delayed Appeal was denied by the Ohio Supreme Court) and June 9, 2017 (the date the AEDPA statute of limitations expired).  Thus, and for all the reasons set forth above, the Court finds Person has failed to demonstrate he has been reasonably diligent in pursuing his rights.

Person also argues his history of medical problems constitutes an "extraordinary circumstance" that warrants equitable tolling.  The Sixth Circuit has recognized that, to the extent that mental and physical illnesses prevent a petitioner from pursuing his legal rights, they can constitute extraordinary circumstances which warrant the equitable tolling of the statute of limitations.  *See, e.g., Plummer v. Warren*, 463 Fed. Appx. 501, 506 (6th Cir. 2012) (citing *Price v. Lewis*, 119 Fed. Appx. 725, 726 (6th Cir. 2005)).  *See also Martinez v. White*, 2017 WL 4848824 at * 4 (W.D. Ky. Oct. 26, 2017).  However, a habeas petitioner must allege more than the "mere existence of physical or mental ailments" to invoke the equitable tolling of the AEDPA's statute of limitations.  *Brown v. McKee*, 232 F.Supp.2d 761, 767 (E.D. Mich. 2002) (quoting *Rhodes v. Senkowski*, 82 F.Supp.2d 160, 173 (S.D.N.Y.2000)).  Instead, a habeas petitioner has the burden of showing that his physical or mental health problems rendered him unable to file a habeas petition during the one year limitations period.  *Id.  See also Price*, 119 Fed. Appx. at 726 ("Illness- mental or physical- tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period."); *Williams v. Palmer*, 2010 WL 889963 at * 2 (W.D. Mich. March 10, 2010) ("It is important to note at the outset that, although a mental or physical illness does warrant equitable tolling in appropriate

24

circumstances, the Petitioner bears the burden of introducing evidence of the illness.")

For all the reasons discussed above, Person has failed to satisfy his burden of demonstrating that his physical health problems constitute an "extraordinary circumstance" warranting equitable tolling.  As noted *supra*, Person's Traverse contain only bald, unsupported assertions that he suffers from unidentified physical conditions and has been "in and out of the medical facility here at the institution and outside hospital."  (Doc. No. 18 at 9.)  Person has submitted no documentation that would enable the Court to objectively ascertain the nature of his health problems or their possible effect on his ability to either timely pursue his direct appeal to the Supreme Court of Ohio or file a habeas petition.  Accordingly, this argument is rejected.

The Court also rejects any suggestion that Person's *pro se* status and/or ignorance of the law constitute  "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015).  Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library

access and lack of access to trial transcript were not sufficient to warrant equitable tolling);

*Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not

sufficient to constitute an extraordinary circumstance and to excuse his late filing"); *Burden v.*

*Bunting*, 2016 WL 5417834 at * 6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that

neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary

circumstances justifying equitable tolling"); *Johnson v. LaRose*, 2016 WL 5462635 at * 10

(N.D. Ohio July 8, 2016) ("A petitioner's *pro se* status and his unawareness of the law provide

no basis for equitable tolling").  Accordingly, and under the circumstances presented, the Court

finds Person has failed to demonstrate his *pro se* status, limited education, and/or lack of legal

training constitute extraordinary circumstances justifying equitable tolling.

In sum, because Person failed to exercise his rights diligently and no extraordinary

circumstance prevented him from filing the instant Petition, the Court finds equitable tolling is

not warranted in this case.

### E.    Actual Innocence

In *McQuiggin v. Perkins*, —— U.S. ——, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019

(2013), the United States Supreme Court held that actual innocence, if proven, may overcome

the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of

actual innocence is not a request for equitable tolling but, rather, a request for an equitable

exception to § 2244(d)(1).  *Id*. at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of

constitutional error with new reliable evidence–whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."

26

*Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court

explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner

does not meet the threshold requirement unless he persuades the district court that, in light of

the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In

making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of

th[e] evidence' purporting to show actual innocence."  *Id*. (quoting *Schlup*, 513 U.S. at 332).

Here, Person does not identify any new, reliable evidence of his actual innocence that

was not presented at trial.  Accordingly, and for all the reasons set forth above, the Court finds

Person has not demonstrated he is entitled to the actual innocence exception.

Therefore, and for all the reasons set forth above, the Court finds the instant Petition is

untimely and Person is not entitled to either equitable tolling or the actual innocence exception.

While the Court recognizes that the Petition herein is untimely by a very small margin, the Sixth

Circuit has made clear that " '[a]bsent compelling equitable considerations, a court should not

extend limitations by even a single day.'"  *Vroman*, 346 F.3d at 604 (quoting

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 561 (6th

Cir.2000)).  Accordingly, it is recommended the instant Petition be dismissed as time-barred.

Out of an abundance of caution, however, the Court will nonetheless proceed to consider the

claims set forth in Person's Petition.

### IV.  Exhaustion and Procedural Default

**A.**     **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[10]  *Id.*

---

[10] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir.

29

1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is

30

actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.      Application to Petitioner**

**1.      Grounds One, Two and Three**

Respondent argues Grounds One through Three are procedurally defaulted because, although he raised them on direct appeal to the state appellate court, Person failed to timely appeal to the Supreme Court of Ohio and leave to file a delayed appeal was denied.  (Doc. No. 7 at 25-26.)  She further asserts Person has failed to demonstrate either cause or prejudice to excuse the default.  (*Id*. at 26-28.)  With regard to cause, Respondent argues Person may not rely on the alleged ineffective assistance of his appellate counsel to excuse the default because Person never filed an Application to Reopen his appeal under Ohio App. R. 26(B).  Therefore, Respondent asserts, Person's ineffective assistance of appellate counsel claim is itself defaulted and may not serve as cause to excuse the default of Grounds One through Three.  (*Id*.)  With regard to prejudice, Respondent argues Person cannot demonstrate he suffered "actual prejudice" as a result of his appellate counsel's alleged ineffectiveness because Person himself acknowledges he became aware of the state appellate court decision on March 11, 2016, one month before the deadline to timely appeal to the Supreme Court of Ohio.  (*Id*.)

Person argues he has established both cause and prejudice to excuse the default of these claims.  (Doc. No. 9 at 4-6; Doc. No. 18 at 13-15.)  He asserts appellate counsel was "constitutionally ineffective where he failed to timely notify and supply petitioner with the February 24, 2016 opinion and judgment entry of the decision of the appellate court . . . until April 28, 2016."  (Doc. No. 9 at 4.)  Person further maintains that "irrespective of petitioner learning through a family friend, on March 11, 2016, that he had lost his appeal; the Office of the Clerk for the Supreme Court of Ohio would have [. . . ] refused to file said Notice of Appeal and Memorandum In Support without" a date-stamped copy of the state appellate court decision.  (*Id.*)  He then argues he has demonstrated cause because he "has been sick for a long time now and has been in and out of the ER (Hospital) and on medical lay-in per institution policy and thus is cause and prejudice related to default." (Doc. No. 18 at 14.)

Person's first habeas ground for relief is that the state trial court violated the Double Jeopardy Clause when it imposed separate sentences for his rape, felonious assault, and kidnapping convictions.  (Doc. No. 1 at 5.)  His second ground is that the state trial court violated the Confrontation Clause when it admitted a recorded, out of court statement of the co-defendant at trial.  (*Id.* at 6.)  Person's third ground for relief allege his convictions are against the manifest weight of the evidence.  (*Id.* at 8.)

As discussed above, the record reflects Person raised each of these three grounds in his direct appeal to the state appellate court, which considered them on the merits and rejected them.  (Doc. No. 7-1, Exhs. 9, 11.)  Person failed, however, to thereafter timely appeal to the Supreme Court of Ohio.  Instead, on May 31, 2016, Person filed a Motion for Leave to file a Delayed Appeal and Notice of Appeal to the Supreme Court of Ohio, which was denied on July

32

27, 2016.  (Doc. No. 7-1, Exhs. 12, 13, 14.)

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R. 6.01(A)(1) & 7.01(A)(1).  The Ohio Supreme Court may, in its discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac .R. 7.01(A)(4).  However, where (as here) the delayed appeal is not allowed, the Sixth Circuit Court of Appeals has held that even an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar:

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.*  A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal.  *Id.*  Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4) (c). **Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.**

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)(emphasis added); *accord Baker v. Bradshaw*, 495 Fed. Appx. 560, 565 (6th Cir.2012) ("the timeliness requirements for an appeal to the Ohio Supreme Court ... constitute adequate and independent state grounds to preclude hearing an untimely claim on the merits."); *Carman v. Ohio*, 2015 WL 1189084 (N.D. Ohio Mar. 16, 2015); *Crutchfield v. Warden*, 2014 WL 3899287 (S.D. Ohio Aug. 11, 2014) (finding that where the petitioner's motion for delayed appeal before the Ohio Supreme Court was

denied, the petitioner must demonstrate cause for his default and actual prejudice to avoid dismissal).

The Court finds Person's failure to file a timely appeal from the February 24, 2016 state appellate court decision to the Ohio Supreme Court, coupled with the Ohio Supreme Court's denial of a motion for delayed appeal, resulted in a procedural default. Therefore, Grounds One through Three are procedurally barred unless Person "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

The Court finds Person has failed to establish cause to excuse the default of Grounds One through Three. Person argues his failure to timely appeal Grounds One through Three should be excused because of the ineffectiveness of appellate counsel. Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir.2002). In fact, a "claim of ineffective assistance of [appellate] counsel ... can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin*, 434 F.3d at 418. However, in order to excuse a default, the ineffective assistance of counsel claim must not *itself* be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 450–51, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause

to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself") (emphasis added).  *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir.2012); *Paluskas v. Bock*, 410 F.Supp.2d 602, 608 (E.D. Mich.2006); *Howard v. Tibbals*, 2014 WL 201481 at * 16 (N.D. Ohio Jan. 17, 2014).

Here, the record reflects Person has made no attempt to raise an ineffective assistance of appellate counsel claim in state court.  He has not filed an Application to Re-open his appeal pursuant to Ohio App. R. 26(B) nor has he offered any explanation for his failure to timely do so.[11]  Thus, Person's claim of ineffective assistance of appellate counsel is itself defaulted and Person has failed to demonstrate there is either cause or prejudice to excuse the default. Accordingly, his ineffective assistance of appellate counsel claim may not serve as cause or prejudice to excuse the default of Grounds One through Three.  *See Edwards*, 529 U.S. at 450–451.

Person next argues his "constant illness" constitutes cause sufficient to excuse the default of habeas Grounds One through Three.  This argument is without merit.  As discussed at length *supra*, Person relies solely on unsupported assertions to support his claims of physical health problems and has submitted no documentation that would enable the Court to objectively ascertain the nature of his health problems or their possible effect on his ability to pursue his appeal rights or protect his federal habeas claims.  It is the petitioner's burden to demonstrate

---

[11] Pursuant to Ohio App. R. 26(B), "[a]n application for reopening [based on a claim of ineffective assistance of appellate counsel] shall be filed in the court of appeals where the appeal was decided within 90 days from the journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

cause and prejudice to excuse procedural default.  *See, e.g., Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1076-1077 (6th Cir. 2015) ("In order to overcome a procedural default, a habeas petitioner must demonstrate both cause for the default and actual prejudice from the alleged error of federal law.")  Under the circumstances presented, and absent any supporting evidence, the Court finds Person has failed in his burden of demonstrating that his alleged physical illness and frequent hospitalizations constitute cause to excuse the default of these claims.

Finally, Person has not come forward with any new or reliable evidence of actual innocence.  As discussed *supra*, to the extent the Petition is liberally construed to assert such a claim, Person has not submitted any evidence that he is actually innocent.  *See Schlup*, 513 U.S. at 324.

Accordingly, and in light of the above, it is recommended the Court find that, in addition to being time-barred, Grounds One through Three of Person's Petition should be dismissed as procedurally defaulted.

**2.      Grounds Four, Five, Six, and Seven**

Respondent argues Grounds Four through Seven are unexhausted and procedurally defaulted because Person failed to raise them in state court.  (Doc. No. 7 at 28-39.)  She further asserts Person has failed to demonstrate cause or prejudice to excuse the default.  (*Id.*)  As he did in connection with Grounds One through Three, Person argues he has established both cause and prejudice to excuse the default of these claims based on his appellate counsel's alleged ineffectiveness and his "constant illness." (Doc. No. 9 at 4-6; Doc. No. 18 at 13-15.)

Person's fourth habeas ground for relief asserts he was denied "equal protection of the law and due process when the prosecution attempted to conceal exculpatory evidence."  (Doc.

No. 1.)  His fifth ground for relief alleges that "fraud and deceit false evidence was submitted to obtain Petitioner's conviction, resulting in a clear *Brady* and *Napue* violation." (*Id.*)  Person's sixth ground for relief alleges his convictions were against the sufficiency of the evidence in the record.  (Doc. No. 6.)  Finally, Person's seventh ground for relief alleges his appellate counsel was ineffective for failing to notify him of "(1) the existence of the State's ORC 2953.21 post-conviction proceeding; (2) the time-line and deadline for filing such petition; and (3) the triggering mechanism which started the deadline."  (*Id.*)

The Court finds Grounds Four, Five, Six and Seven are procedurally defaulted.  Person has not, at any point in time, raised any of these claims in the state courts.  As set forth *supra*, Person raised Grounds One through Three in the state appellate court, in which he raised alleged violations of the Double Jeopardy and Confrontation Clauses, and argued his convictions were against the manifest weight of the evidence.  These claims made no mention, however, of any the various grounds for relief set forth in Grounds Four through Seven. Moreover, even if Person had alluded to any of these particular grounds in his direct appeal to the state appellate court, Person failed to timely appeal the state appellate court direct appeal decision to the Ohio Supreme Court and leave to file a delayed appeal was denied, resulting in a procedural default for the reasons set forth *supra*.

The Court also notes that Person has not pursued post-conviction relief under Ohio Rev. Code § 2923.21 or sought to re-open his appeal pursuant to Ohio App. R. 26(B), nor has he offered any explanation for his failure to do so.  As the state appellate court affirmed his convictions and Ohio Supreme Court denied leave to appeal well over two years ago (in February and July 2016, respectively), the time for Person to timely seek relief under either §

37

2923.21 or Rule 26(B) is long expired.  Further, there is nothing in the Petition suggesting that a state court remedy would be now available to Person, at this late date, to raise any of the claims set forth in habeas Grounds Four, Five, Six or Seven.[12]  Thus, the Court finds these grounds for relief are procedurally defaulted.

Lastly, the Court finds, for all the reasons discussed in connection with Grounds One through Three, that Person has failed to demonstrate either cause or prejudice sufficient to overcome the procedural default.  Nor has he come forward with any new or reliable evidence of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended the Court find that, in addition to being time-barred, Grounds Four through Seven of Person's Petition should be dismissed as procedurally defaulted.[13]

---

[12] Person has not identified the factual basis of either his *Brady* or *Napue* claims nor has he identified when he became aware of the basis for these claims.  Further, Person has neither argued or demonstrated that a state court remedy relating to these claims remains available to him at this time, over four years after his October 2014 conviction and sentence.

[13] As the Court finds Person's habeas claims should be dismissed as both time-barred and procedurally defaulted, the Court need not address the merits of Person's claims.

### V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Finally, Person summarily requests appointment of counsel.  (Doc. No. 18 at 1.)  Person's

request is DENIED.


Date:   January 23, 2019                               *s/ Jonathan Greenberg*
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

39